# THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# ASHEVILLE DIVISION
# CIVIL CASE NO. 1:17-cv-00347-MR

CLARENCE HENDRIX, JR.,           )
                                 )
        Plaintiff,            )
                                 )          **MEMORANDUM OF**
    vs.                          )          **DECISION AND ORDER**
                                 )
NANCY A. BERRYHILL, Acting       )
Commissioner of Social Security, )
                                 )
        Defendant.            )
_____  )

**THIS MATTER** is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 12] and the Defendant's Motion for Summary Judgment [Doc. 14].

## I.   PROCEDURAL HISTORY

The Plaintiff, Clarence Hendrix, Jr., ("Plaintiff"), filed applications for disability insurance benefits under Title II of the Social Security Act (the "Act") and supplemental security income under Title XVI of the Act, alleging an onset date of August 31, 2011. [Transcript ("T.") at 242]. The Plaintiff's applications were denied initially and upon reconsideration. [T. at 57, 73, 147, 157]. Upon Plaintiff's request, a hearing was held on August 18, 2016 before an Administrative Law Judge ("ALJ"). [T. at 27-55]. On October 14,

2016, the ALJ issued a written decision denying the Plaintiff benefits, finding that the Plaintiff was not disabled within the meaning of the Act since the alleged onset date August 31, 2011. [T. at 8-26]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. at 1-3]. The Plaintiff has exhausted all available administrative remedies, and this case is now ripe for review pursuant to 42 U.S.C. § 405(g).

## II. STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, Richardson v. Perales, 402 U.S. 389, 401 (1971); and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). "When examining [a Social Security Administration] disability determination, a reviewing court is required to uphold the determination when an ALJ has applied correct legal standards and the ALJ's factual findings are supported by substantial evidence." Bird v. Comm'r, 699 F.3d 337, 340 (4th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Johnson v. Barnhart, 434 F.3d 650, 653 (4th Cir. 2005) (internal quotation marks omitted). "It consists of more than a mere scintilla

2

of evidence but may be less than a preponderance." Hancock v. Astrue, 667 F.3d 470, 472 (4th Cir. 2012) (internal quotation marks omitted).

"In reviewing for substantial evidence, [the Court should] not undertake to reweigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the ALJ." Johnson, 434 F.3d at 653 (internal quotation marks and alteration omitted). Rather, "[w]here conflicting evidence allows reasonable minds to differ," the Court defers to the ALJ's decision. Id. (internal quotation marks omitted). To enable judicial review for substantial evidence, "[t]he record should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." Radford v. Colvin, 734 F.3d 288, 295 (4th Cir. 2013).

## III. THE SEQUENTIAL EVALUATION PROCESS

A "disability" entitling a claimant to benefits under the Social Security Act, as relevant here, is "[the] inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration Regulations set out a detailed five-step process for reviewing applications for disability.

20 C.F.R. §§ 404.1520, 416.920; Mascio v. Colvin, 780 F.3d 632, 634 (4th Cir. 2015). "If an applicant's claim fails at any step of the process, the ALJ need not advance to the subsequent steps." Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995) (citation omitted). The burden is on the claimant to make the requisite showing at the first four steps. Id.

At step one, the ALJ determines whether the claimant is engaged in substantial gainful activity. If so, the claimant's application is denied regardless of the medical condition, age, education, or work experience of the claimant. Id. (citing 20 C.F.R. § 416.920). If not, the case progresses to step two, where the claimant must show a severe impairment. If the claimant does not show any physical or mental deficiencies, or a combination thereof, which significantly limit the claimant's ability to perform work activities, then no severe impairment is established and the claimant is not disabled. Id.

At step three, the ALJ must determine whether one or more of the claimant's impairments meets or equals one of the listed impairments ("Listings") found at 20 C.F.R. 404, Appendix 1 to Subpart P. If so, the claimant is automatically deemed disabled regardless of age, education or work experience. Id. If not, before proceeding to step four, the ALJ must assess the claimant's residual functional capacity ("RFC"). The RFC is an administrative assessment of "the most" a claimant can still do on a "regular

and continuing basis" notwithstanding the claimant's medically determinable impairments and the extent to which those impairments affect the claimant's ability to perform work-related functions. SSR 96-8p; 20 C.F.R. §§ 404.1546(c); 404.943(c); 416.945.

At step four, the claimant must show that his or her limitations prevent the claimant from performing his or her past work. 20 C.F.R. §§ 404.1520, 416.920; <u>Mascio</u>, 780 F.3d at 634. If the claimant can still perform his or her past work, then the claimant is not disabled. <u>Id.</u> Otherwise, the case progresses to the fifth step where the burden shifts to the Commissioner. At step five, the Commissioner must establish that, given the claimant's age, education, work experience, and RFC, the claimant can perform alternative work which exists in substantial numbers in the national economy. <u>Id.</u>; <u>Hines v. Barnhart</u>, 453 F.3d 559, 567 (4th Cir. 2006). "The Commissioner typically offers this evidence through the testimony of a vocational expert responding to a hypothetical that incorporates the claimant's limitations." 20 C.F.R. §§ 404.1520, 416.920; <u>Mascio</u>, 780 F.3d at 635. If the Commissioner succeeds in shouldering her burden at step five, the claimant is not disabled and the application for benefits must be denied. <u>Id.</u> Otherwise, the claimant is entitled to benefits. In this case, the ALJ rendered a determination adverse to the Plaintiff at the fifth step.

## IV. THE ALJ'S DECISION

At step one, the ALJ found that the Plaintiff met the insured status requirements of the Social Security Act through December 31, 2013. [T. at 13]. The ALJ then found that although the Plaintiff had engaged in substantial gainful activity during the second quarter of May 2015, there had been a continuous twelve-month period during which the Plaintiff did not engage in substantial gainful activity. [Id.]. At step two, the ALJ found that the Plaintiff has severe impairments including mood disorder, degenerative disc disease, and right elbow impairment with post-traumatic arthritis. [T. at 14]. At step three, the ALJ determined that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals the Listings. [Id.]. The ALJ then determined that the Plaintiff, notwithstanding his impairments, has the RFC:

> [T]o perform light work as defined by 404.1567(b) and 416.967(b) except he can **occasionally push and pull with the right upper extremity (dominant), he can frequently reach with the right upper extremity, and frequently handle and finger with the right upper extremity**. He can occasionally climb ladders, can occasionally stoop and crouch. He cannot have concentrated exposure to hazards. He is capable of simple, routine repetitive tasks for two-hour intervals throughout the day at a non-production pace. He is further restricted to occasional public contact, and occasional contact with supervisors and co-workers. Work should be performed in a stable

> work environment, one that does not have frequent
> changes.

[T. at 16] (emphasis added).

At step four, the ALJ identified Plaintiff's past relevant work as an automobile service attendance, mechanic helper, and construction worker. [T. at 19]. The ALJ observed, however, that the Plaintiff is "unable to perform his past relevant work." [Id.]. At step five, based upon the testimony of the VE, the ALJ concluded that, considering Plaintiff's age, education, work experience, and RFC, Plaintiff is capable of performing other jobs that exist in significant numbers in the national economy, including electronics worker, laundry folder, and hand packager. [T. at 20]. The ALJ therefore concluded that the Plaintiff was not "disabled" as defined by the Social Security Act from August 31, 2011, the alleged onset date, through October 14, 2016, the date of the ALJ's decision. [T. at 21].

## V. DISCUSSION[1]

### A. Motion for Summary Judgment

In this appeal, the Plaintiff argues that the ALJ erred in assessing the Plaintiff's RFC. [Doc. 13 at 4]. Specifically, the Plaintiff contends that the ALJ erred "in determining that [Plaintiff] can "frequently" reach with his right upper

---

[1] Rather than set forth the relevant facts in a separate section, the Court has incorporated the relevant facts into its legal analysis.

extremity, and "frequently" handle and finger with the right upper extremity, as opposed to only "occasionally" reach, handle and finger with his right upper extremity."[2] [Id.]. Plaintiff argues that this error requires remand because if Plaintiff was limited to "occasional" use of his right arm for reaching, fingering, and handling, then he would be disabled. [Id. at 4, 7-11].

Social Security Ruling 96-8p[3] explains how adjudicators should assess residual functional capacity. The Ruling instructs that the RFC "assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions" listed in the regulations.[4] SSR 96-8p. The Ruling further provides that the "RFC assessment must include a narrative

---

[2] The Court notes that to the extent that Plaintiff attempts to weave any other disparate legal arguments or errors into her assignments of error, the Court disregards those arguments. [See Doc. 13]. Such arguments must be set forth in separate assignments of error to be considered by this Court. See e.g. Gouge v. Berryhill, No. 1:16-cv-00076-MR, 2017 WL 3981146, at *2 (W.D.N.C. Sept. 11, 2017) (Reidinger, J.) (collecting cases). The Court instructs counsel for Plaintiff to separately set forth each alleged error both so that the Court may consider them and to aid counsel in analyzing the proper framework and legal bases for these arguments.

[3] The Ruling's title is "Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims."

[4] The functions listed in the regulations include the claimant's (1) physical abilities, "such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions (including manipulative or postural functions, such as reaching, handling, stooping or crouching)"; (2) mental abilities, "such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, coworkers, and work pressures in a work setting"; (3) other work-related abilities affected by impairment(s) of vision, hearing or other senses, and impairment(s) which impose environmental restrictions." 20 C.F.R. § 416.945.

discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and non-medical evidence (e.g., daily activities, observations)." Id. (emphasis added). An ALJ's failure to follow these procedures requires remand, as it leaves the Court with a record lacking the evidence necessary for meaningful review. Mascio v. Colvin, 780 F.3d at 632, 636-7 (4th Cir. 2015). A reviewing court cannot be "left to guess about how the ALJ arrived at his conclusions on [a plaintiff's] ability to perform relevant functions and indeed, remain uncertain as to what the ALJ intended." Id. at 637. It is the duty of the ALJ to "build an accurate and logical bridge from the evidence to his conclusion." Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (citation omitted). "Without this explanation, the reviewing court cannot properly evaluate whether the ALJ applied the correct legal standard or whether substantial evidence supports his decisions, and the only recourse is to remand the matter for additional investigation and explanations." Mills v. Berryhill, No. 1:16-cv-25-MR, 2017 WL 957542, at *4 (W.D.N.C. Mar. 10, 2017) (Reidinger, J.) (citing Radford, 734 F.3d at 295).

In the RFC assessment in this case, the ALJ found the Plaintiff can "occasionally push and pull with the right upper extremity (dominant), he can frequently reach with the right upper extremity, and frequently handle and

9

finger with the right upper extremity." [T. at 16]. The ALJ's decision, however, contains no function-by-function assessment of these activities, as required in SSR 96-8p and under Mascio. After setting out a bare assessment of the Plaintiff's RFC, the ALJ recites and observes the relative consistency of the Plaintiff's complaints and testimony with the medical evidence as follows:

> The [Plaintiff] alleged that he has had right arm problems since ten years of age that have gotten progressively worse (Exhibit 1F/5). His alleged symptoms include decreased range of motion in his right arm, right elbow, stiffness, and pain (Exhibit 1F/5). He endorsed a history of physical therapy with no improvement in the function of his right arm (Exhibit 1F/3). This report was consistent with his testimony at the hearing.

[T. at 16]. The ALJ then proceeds to recite certain medical and non-medical evidence as follows:

> At the medical consultative examination in October 2012, the examiner indicated abnormal range of motion in the right shoulder, and right elbow (Exhibit 1F/5). However, the claimant had no difficulty putting on and removing his shoes, and had full motor strength and bilateral hand grip (Exhibit 1F/5). He also had full power in his upper extremities and good sensation (Exhibit 1F/5). X-rays in November 2012 show posttraumatic arthritis with severe arthritic changes, spurring, and joint space loss (Exhibit 2F/5). The claimant was a surgical candidate, but did not have it at that time (Exhibit 2F/5). In December 2013, the claimant continued to complain of

> worsening and again was referred for surgery (Exhibit 5F/3).
>
> The claimant had surgery on his right arm and elbow in February 2014 (Exhibit 7F/3). He was reported as doing well, in spite of numbness in the ulnar nerve distribution (Exhibit 7F/3). The claimant was encouraged to keep working on his active range of motion (Exhibit 7F/3). A consultative examination in May 2014 showed normal sensation in spite of limited strength in the right upper extremity and treatment records note slow progress (Exhibit 14F/5; 16F/2, 8). Six weeks post-surgery the claimant was still noted as doing well overall and progressing as expected (Exhibit 9F/3). He was encouraged to continue working on his stretching and was made aware that while he would not achieve full range of motion, but should be able to achieve increased range of motion (Exhibit 9F/3). His follow-up was scheduled for six weeks, suggesting that he did not require more frequent treatment (Exhibit 9F/3). In later records, the claimant alleged that he experienced no improvement with surgery (Exhibit 12F/1).

[T. at 16-17].

Despite this evidence, the ALJ went on to conclude:

> However, he can cut grass at times and worked after the alleged onset date, which supports some functionality (Exhibit 12F/2; Hearing Testimony). Nonetheless, the undersigned has considered this evidence in determining the residual functional capacity.

[T. at 17]. The ALJ fails to explain, however, how this evidence supports his conclusions regarding the limitations contained in his RFC assessment,

particularly that the Plaintiff is capable of "frequent," as opposed to only "occasional," reaching, handling, and fingering. Further, the lack of explanation is compounded by the ALJ assigning "partial weight" to the opinions of Plaintiff's October 2012 consultative examiner, but not providing any further discussion or assignment of weight to the opinions of Plaintiff's May 2014 consultative examiner. [T. at 18].[5] The ALJ does summarizes the evidence of record and concludes the Plaintiff can perform "light work" except with certain limitations, such as being able to "frequently reach with the right upper extremity, and frequently handle and finger with the right upper extremity." [T. at 16]. However, the ALJ never explains how he concluded—*based on this evidence*—that the Plaintiff could actually perform the tasks required of light work or the additional physical limitations in the RFC. See Woods v. Berryhill, 888 F.3d 686, 694 (4th Cir. 2018) ("The ALJ concluded that [Plaintiff] could perform "medium work" and summarized evidence that

---

[5] The ALJ states that Dr. Aregai A. Girmay indicated that the Plaintiff "had full motor strength and bilateral hand grip" at the October 2012 consultative examination. [T. at 16]. The ALJ then goes on to state that the Plaintiff had "limited strength in the right upper extremity" at the May 2014 consultative examination by Dr. Shirley D. Ocloo and that the Plaintiff's "treatment records note slow progress." [T. at 17]. However, the ALJ fails to explain how he considered or reconciled Dr. Ocloo's examination with Dr. Girmay's examination. Particularly, Dr. Ocloo's examination indicates decreased range of motion for the Plaintiff's right elbow and less power in his upper extremities as compared to Dr. Girmay's examination. [Compare T. at 303, 306 with T. at 410, 413]. Further, Dr. Girmay's examination notes also indicate that the Plaintiff's "[m]otor strength [and] bilateral handgrip is good," however, Dr. Ocloo specifically notes that the Plaintiff has "very poor manual dexterity [and] weak grip." [Id.].

12

he found credible, useful, and consistent. But the ALJ never explained how he concluded—*based on this evidence*—that [Plaintiff] could actually perform the tasks required by "medium work."). Therefore, the ALJ failed to build an "accurate and logical bridge" from the recited evidence to the RFC conclusions.

While the ALJ's ultimate conclusions as to Plaintiff's limitations may be correct, the Court is left to guess regarding how they were reached. Under these circumstances, the Court cannot affirm the ALJ's finding of no disability without a showing of substantial evidence to support his findings at each step of the sequential evaluation process. Mascio, 780 F.3d at 637.

## VI. CONCLUSION

Because this Courts lacks an adequate record of the basis for the ALJ's decision, it cannot conduct a meaningful review of that ruling. See Radford, 734 F.3d at 295. On remand, the ALJ should conduct a proper function-by-function analysis of the Plaintiff's exertional and non-exertional limitations, narratively discussing all of the relevant evidence, and specifically explaining how he reconciled that evidence (both supportive and contradictory) to his conclusions.

**ORDER**

**IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 12] is **GRANTED** and the Defendant's Motion for Summary Judgment [Doc. 14] is **DENIED**. Pursuant to the power of this Court to enter judgment affirming, modifying or reversing the decision of the Commissioner under Sentence Four of 42 U.S.C. § 405(g), the decision of the Commissioner is **REVERSED** and the case is hereby **REMANDED** for further administrative proceedings consistent with this opinion. A judgment shall be entered simultaneously herewith.

**IT IS SO ORDERED.**

Signed: March 22, 2019

Martin Reidinger
United States District Judge